IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JULIANNE LOCKE,

Plaintiff

v.

HAMPTON INN,

Defendant.                                          Nos. 08-0018-DRH &
                                                         08-0168-DRH

**MEMORANDUM and ORDER**

**HERNDON, Chief Judge:**

## I. Introduction and Background

Pending before the Court is Defendant Hampton Inn's motion for summary judgment (Doc. 24).[1] Plaintiff Locke opposes the motion (Doc. 28). Based on the following, the Court grants the motion for summary judgment.

On January 8, 2008, pursuant to 42 U.S.C. § 2000e, Julianne Locke, *pro se,* filed suit against her former employer, Hampton Inn, alleging that it discriminated against her by refusing to increase her work hours because she is a

---

[1] Also pending is Locke's objection to Defendant Hampton Inn's motion for summary judgment (Doc. 27). Locke contends that Hampton Inn's motion for summary judgment is untimely in that it should have been filed by November 28, 2008, instead of December 19, 2008. Hampton Inn argues that the motion is timely as the Scheduling and Discovery Order set the dispositive motion deadline for December 19, 2008. On May 7, 2008, Magistrate Judge Wilkerson entered the Scheduling Order (Doc. 17). The text of the docket entry for the Scheduling Order states that the dispositive motion deadline is December 19, 2008, while the Scheduling Order itself states that the dispositive motion deadline is November 28, 2008. Obviously, this discrepancy has caused confusion between the parties. However, in the interest of justice, the Court finds it proper to overrule the objection and to let the motion for summary judgment stand as timely filed.

Native American (Doc. 1). On March 5, 2008, pursuant to 42 U.S.C. § 2000e, Locke, *pro se*, filed another suit against Hampton Inn alleging that it retaliated against her for filing a charge of discrimination against it. *Locke v. Hampton Inn*, 08-0168-DRH; (Doc. 1). Because the cases arise out of the same facts, the Court consolidated the cases on April 30, 2008 (Doc. 12).

According to Locke's first complaint, she claims that Hampton Inn "repeatedly refused to give her more hours at work although Plaintiff had more seniority and experience than white employees who were similarly situated due to the fact of Plaintiff's race, Native American." (Doc. 1; p. 4). Locke's second complaint alleges that: "My son and I filed charges of discrimination through EEOC against Hampton Inn on 8-17-07, since then I have been retaliated against by first a write up on 11-11-07 for calling in sick and on 12-9-07 I was laid off and last day of work to be 12-16-07." (08-0168; Doc. 1, p. 4).

## II. Facts

In October 2006, Hampton Inn hired Locke as a full time front desk clerk at Hampton Inn making $7.00 an hour. Prior to that, beginning in January 2006, Locke ran a home day care, which was her full time employment. In December 2006, Fallon Robinson, the former front office manager, informed Locke that Hampton Inn was laying off employees because of a reduction in occupancy and that employee hours would be decreased until production picked up at the beginning

of the year.[2] In December 2006, Hampton Inn did not lay off Locke. However, Locke begged Robinson to lay her off. Locke testified: "Yes, to lay me off, because I had the day care and I believe I was working full time at both. I preferred that Steven kept the job, my son, because he did not have any other employment." (Locke's Depo; p. 16, lines 12-15). Subsequently, Locke asked Robinson to reduce her hours because she was taking care of more children at the day care. As a result of this request, Locke's hours were decreased. Locke testified that she was happy working part time, 28 hours, in January, February, March and April of 2007.

In April 2007, Locke still was working part time – 28 hours. On April 20, 2007, she received correspondence from Chartwell Hospitality regarding her change of status from full time to part time. The letter revealed that since Plaintiff had not maintained the required numbers for full time status, her status was changed to part time. Locke testified that she had no complaints about her status change.[3] Thereafter, she picked up more hours in July 2007. Locke was working 32 hours, which is also considered part time.

Locke did not ask for additional hours until August 2007. She asked Tim Reeder, the front office manager, for additional hours because she had a drop

---

[2] Generally, the months of November, December, January and the early part of February are the slow season at Hampton Inn. During these months, occupancy drops and Hampton Inn typically reduces the hours of its employees.

[3] Locke testified as to going part time: "A. No. I did not want benefits. That is one reason why I dropped the hours. Q. I guess I am confused. A. I went back full-time at the day care, plus I wanted to drop those benefits that I had. That is why I got that letter." (Locke Depo; p. 29, lines 11-16).

in day care status, so she had more hours available to work at Hampton Inn. Reeder told her that he did not have additional hours because he had new hires that he needed to give hours to and that all the shift supervisors needed to get full-time hours first. Locke complained to Reeder stating that she had more seniority than the new employees. Because she could not get more hours, Locke dropped her hours at Hampton Inn to one day a week (one eight hour shift) and picked up more hours at the day care. Shortly thereafter, Locke had a conversation with Kevin Morrey, the general manager. Morrey asked her why she dropped to one day a week and she told him that since they could not give her more hours, she had to drop to one day so that she could get some day care kids during the week.

She filed her charge of race discrimination on October 30, 2007 with the Illinois Department of Human Rights alleging, *inter alia*, that Hampton Inn discriminated against her by refusing to give her more hours because of her race.

On November 11, 2007, Locke called in sick without finding coverage for her shift. Locke testified that when she called in sick, April Jones, the front officer manger, informed Locke that she needed to find coverage for her shift. On November 18, 2007, Locke was disciplined via a written warning for violating company policy by not finding coverage for her shift. Thereafter, Locke continued to work her one day a week shift on Sundays.

Sometime in the end of November 2007, Jones contacted Locke about increasing her hours because she was supposed to be full time status and that she needed to pick up her hours or be laid off. Locke told Jones that she had full time

at the day care at that time. On December 9, 2007, Jones told Locke that she was being laid off due to the decrease in occupancy and because Locke would not pick up full time hours and that Hampton Inn would call her back in March. Locke testified that it was her understanding that she was being laid off due to decrease in occupancy. Her last day at Hampton Inn was December 16, 2007. She did not contact anyone at the Hampton Inn regarding her return to work. Subsequently, Locke filed her retaliation charge of discrimination.

### III. Summary Judgment Standard

Summary Judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FEDERAL RULE OF CIVIL PROCEDURE 56(c)**.

To defeat summary judgment, the nonmoving party must do more than raise a metaphysical doubt as to the material facts. Instead, she "must come forward with specific facts showing that there is a genuine issue for trial." ***Keri v. Board of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006), cert. denied, 549 U.S. 1210 (2007)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))**. "Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." ***Haywood v. North American Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997); *see also* Fed.R.Civ.P. 56(e)("an opposing party may not rely on allegations or denials in**

**its own pleading")**.

This Court can find a genuine issue of material fact precluding summary judgment "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." **Argyropoulos v. City of Alton, 539 F.3d 724, 731 (7th Cir. 2008)( quoting Sides v. City of Champaign, 496 F.3d 820, 826 (7th Cir. 2007))**. In ruling on a summary judgment motion, this Court views the evidence and all inferences reasonably drawn from the evidence in the light most favorable to the non-moving party (here, Locke). **TAS Distributing Co., Inc. v. Cummins Engine Co., Inc., 491 F.3d 625, 630 (7th Cir. 2007); Reynolds v. Jamison, 488 F.3d 756, 764 (7th Cir. 2007)**.

It is significant to note that Locke is proceeding *pro se*. The pleadings of *pro se* litigants should not be held to the same stringent standards as pleadings drafted by formally trained lawyers; instead they must be liberally construed. **See Kyle II v. Patterson, 196 F.3d 695, 697 (7th Cir. 1999)(citing Wilson v. Civil Town of Clayton, Ind., 839 F.2d 375, 378 (7th Cir. 1988)(pro se complaints/pleadings are to be liberally construed.)) See also Cruz v. Beto, 405 U.S. 319, 322 (1972)**. Bearing these principles in mind, the Court assesses the record before it, having carefully reviewed all the materials submitted with the summary judgment briefs.

## IV. Analysis

### Race Discrimination

Title VII of the Civil Rights Act of 1964 makes it unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's national origin." **42 U.S.C. § 2000e-2(a)(1)**. A Title VII plaintiff must either (a) provide direct evidence of an employer's discriminatory intent, or (b) show disparate treatment using the indirect, burden-shifting method established in ***McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)**. *See **Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir.), cert. denied, 534 U.S. 824 (2001)**.

The direct method of proof involves admissions by the employer, near-admissions by the employer, and more attenuated circumstantial evidence that "suggests discrimination through a longer chain of inferences." ***Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008); *Hemsworth v. QuoteSmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007)**. By contrast, the indirect method of proof involves a "certain subset of circumstantial evidence that includes how the employer treats similarly situated employees and conforms to the prescription of *McDonnel Douglas Corp. v. Green*." ***Faas*, 532 F.3d at 641**.[4]

---

[4] "The rubric of the indirect method was first set forth in McDonnell Douglas Corp. v. Green.... Under this methodology, [the plaintiff] may create a presumption of discrimination by establishing a prima facie case of discrimination." ***Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008)(citing *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1290 (7th Cir. 1997))**.

The United States Court of Appeals for the Seventh CIrcuit has been critical of this nomenclature, because the phrase "direct method" erroneously implies that an employee must proceed with direct evidence. **See Faas, 532 F.3d at 641; Luks v. Baxter Healthcare Corp., 467 F.3d 1049, 1052 (7th Cir. 2006)(the distinction between the two avenues of proof is "vague," and the terms "direct" and "indirect" are themselves somewhat misleading ....")**.

The Seventh Circuit has explained:

> "Direct" proof of discrimination is not limited to near-admissions by the employer that its decision were based on a proscribed criterion (e.g., "You're too old to work here"), but also *includes circumstantial evidence* which suggests discrimination through a longer chain of inferences."... The focus of the direct method of proof thus is not whether the evidence offered is "direct" or "circumstantial" but rather whether the evidence "points directly" to a discriminatory reason for the employer's action.

**Atanus, 502 F.3d at 671-72(citations omitted)**.

Under the direct method of proof, circumstantial evidence demonstrating intentional discrimination includes: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class, and the employer's reason is a pretext for discrimination." *Id*. Because Locke

has presented no direct evidence of race discrimination, the Court turns to the indirect, burden shifting method.

Under ***McDonnell Douglas***, a plaintiff must first make out a prima facie case of discrimination, which requires Locke to prove: "(1) that she is a member of a protected class; (2) she was meeting her employer's legitimate expectations at the time of the alleged adverse action; (3) she was subjected to an adverse employment action; and (4) the employer treated similarly situated employees not in the protected class more favorably." ***Anders v. Waste Mgmt. of Wisconsin*, 436 F.3d 670, 676 (7th Cir. 2006)(quoting *Scaife v. Cook COunty*, 446 F.3d 735, 739 (7th Cir. 2006))**. The Seventh Circuit repeatedly has stressed that a Title VII plaintiff must establish each of these elements. ***Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004);** *Atanus*, **520 F.3d at 673**.

Once the plaintiff has met her burden of establishing a prima facie case, "A presumption of discrimination arises, and the employer must articulate a legitimate and non-discriminatory reason for the employment action" in question. ***Moser v. Indiana Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2000)**. At this stage, the employer is not required to "prove that it was actually motivated by the proffered reason. Rather an employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." ***Rudin v. Lincoln Land***

***Community College*, 420 F.3d 712, 724-25 (7th Cir. 2005)(citing *Stockett v, Muncie Indiana Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000))**. And if this is accomplished, the burden shifts back to the plaintiff to show that the employee's reasons are pretextual. ***Jackson v. City of Chicago*, 552 F.3d 619, 622 (7th Cir. 2009)**.

In the case *sub jice*, Locke has not and on the record before the Court (construing all facts and reasonable inferences in her favor) *cannot* meet her prima face case race discrimination. As to her race discrimination claim, two elements are not in dispute. Hampton Inn does not contest that as a Native American, Locke is a member of a protected class. Additionally, Hampton Inn concedes that Locke was performing her job satisfactorily.

As to Locke's allegation that Hampton Inn discriminated against her by refusing to allow her to eat breakfast. The question is whether the refusal to allow her to eat breakfast is an adverse employment action for the purposes of Title VII. Clearly it is not. In determining whether an employment action is adverse, the Court analyzes the issue "from the perspective of a reasonable person in the plaintiff's position," in light of all the circumstances. ***Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1119-20 (7th Cir. 2009)**.

The evidence submitted by Locke reveals that it was not a material adverse employment action and that she was not treated any different than other similarly situated employees as to the breakfast claim. Robinson's affidavit states:

"Some employees started helping themselves to the bar during breakfast hours and taking away from the guests…. When this became a big issue, the food was then thrown away and no one was suppose to be in the breakfast area." (Robinson Affidavit, p. 2) Further, Locke testified:

> A. She worked there as well. She knows how – she was there when they said that we couldn't eat breakfast anymore, and she knew that the housekeepers were still eating breakfast and the maintenance men were.
> Q. Ms. Locke, you just said, "She was there when they said we could not eat breakfast anymore."
> A. Right.
> Q. Who is "we"?
> A. Everybody. When they said that we couldn't eat breakfast, the meant everybody. Nobody.
> Q. Meaning no employees.
> A. No employees at all.
> Q. So regardless of your race, no employee could eat?
> A. Right.
> Q. So is it your testimony that Hampton Inn would not allow any employee of the –
> A. The policy was that no one could eat. That is what the policy became. She said no one was allowed to eat breakfast anymore.

(Locke Depo; p. 66-67, lines 23-20).

In light of the facts in the record, the Court finds that Locke's allegations regarding the refusal to allow her to eat breakfast did not constitute a material adverse employment action and that she has not established that other employees were treated more favorably. Accordingly, this portion of her race discrimination claim must be dismissed.

As her the remaining portion of her race discrimination claim, Locke contends that she was refused more hours because of here race. Obviously, this

allegation constitutes an adverse employment action. However, the record reveals that all employees hours were reduced due to the decrease in occupancy and that Locke asked for her hours to be reduced. Further, Locke testified that she was happy with the reduced hours in January, February, March and April of 2007.

Assuming *arguendo* that Locke established a prima facie case, Hampton Inn has offered non-discriminatory reasons for reducing Locke's hours and then failing to call her back to work. Specifically, Locke's hours were reduced because of the downturn in business during the winter months. Additionally, Locke, depending on the number of children at her day care, would ask for more or less hours at the Hampton Inn. Thus, the Court need not determine whether these were the actual reasons for Hampton Inn's actions. It is sufficient that a rational trier of fact could conclude that these decisions were not motivated by a discriminatory animus. In that case, the burden would shift back to Locke to present evidence that these reasons are pretextual. Locke fails to provide any evidence of pretext. She has failed to meet her burden with respect to her claim that Hampton Inn was discriminating against her when it reduced her hours and failed to call her back to work because she is a Native American.

### **Retaliation**

As with a claim of race discrimination, Locke may survive a motion for summary judgment by proving retaliation under the direct or indirect method. **_Argyropoulos,_ 539 F.3d 724, 733 (7th Cir. 2008) (citation omitted)**. Under the direct method of proving retaliation, Locke must show she engaged in a protected

activity, suffered an adverse action, and that a causal connection exists between her activity and the adverse action. *Id.* The indirect method mirrors the prima facie requirements of proving discrimination, except Locke must show that she engaged in a statutorily protected activity instead of showing that she was in a protected group. *Id.*

Here, Locke has failed to produce direct evidence that she was retaliated for filing an EEOC charge. Thus, Lock must proceed with the indirect method. For the same reasons why Locke failed to establish her race discrimination claim, Locke cannot established a prima facie case of retaliation. Furthermore, under the facts of this case, the single written warning does not constitute an adverse employment action.[5]

---

[5] An adverse employment action is one that "must materially alter the terms and conditions of employment." **Whittaker v. N. Ill. Univ., 424 F.3d 640, 648 (7th Cir. 2005)**. An adverse employment action is an action that constitutes a "significant change in the claimant's employment status such as hiring, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." **Rhodes v. Ill. Dep't of Transp., 359 F.3d 498, 504 (7th Cir. 2004)**. Adverse actions must be materially adverse to be actionable and must be more than a mere inconvenience or alteration of job responsibilities. **Oest v. Ill. Dep't of Corrs., 240 F.3d 605, 613 (7th Cir. 2001) (citation omitted)**. Rather, an employee must show that there has been a quantitative or qualitative change in the terms or conditions of his employment. **De la Rama v. Ill. Dep't of Human Servs., 541 F.3d 681, 686 (7th Cir. 2008)**. Since adverse actions can come in many forms, a court must consider the facts of each particular situation when analyzing whether an adverse action is material. **Oest, 240 F.3d at 613**. Reprimands, warnings, and negative performance evaluations do not rise to the level of an adverse employment action. *Id.* **("Nor do we believe that the oral or written reprimands received by [the plaintiff] under the [defendant's] progressive discipline system can be considered, … as implicating sufficiently 'tangible job consequences' to constitute an independent basis of liability under Title VII."); Sweeney v. West, 149 F.3d 550, 556 (7th Cir. 1998) ("Absent some tangible job consequence accompanying [the] reprimands, we decline to broaden the definition of adverse employment action to include them."); Kersting v. Wal-Mart Stores, Inc., 250 F.3d at 1118 (7th Cir. 2001) (holding that oral and written warnings did not constitute materially adverse employment actions).**

Even if Locke could establish a prima facie case of retaliation, her claim would fail for the same reasons as her race discrimination claim. Her hours were reduced because of the decrease in occupancy and at her request. Further, she was disciplined for not following company policy in finding coverage for her shift. She fails to establish retaliation under both the direct and indirect methods.

### V. Conclusion

Julianne Locke has identified (and this Court can find) no genuine issue of material fact in the voluminous record. Locke has failed to make a prima facie case on any of her claims. Because the pleadings, the discovery, the affidavits and all the other exhibits before the Court "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," the Court **GRANTS** Defendant Hampton Inn's motion for summary judgment (Doc. 24).

The Court **ORDERS** the Clerk of the Court to enter judgment in favor of Defendant Hampton Inn and against Plaintiff Julianne Locke. Further, the Court **OVERRULES** Locke's objection to the Defendant, Hampton Inn's motion for summary judgment (Doc. 27).

**IT IS SO ORDERED.**

Signed this 7th day of April, 2009.

/s/ *David R Herndon*

**Chief Judge**
**United States District Court**